*382 Brown, C.J.,
dissenting.
{¶ 29} The majority concludes that the language of R.C. 2923.24(A) is unambiguous and that the ordinary meaning of “criminally” is “in a criminal manner, i.e., in violation of law.” Based upon that broad definition of “criminally,” the majority holds that a charge of possessing criminal tools may be based on the use of criminal tools with the intent to violate federal law. The term “criminally” as used in R.C. 2923.24 is not defined explicitly in the Ohio Revised Code. I concede that the term could be defined as the majority suggests if the definition could be properly applied without reference to other relevant statutory provisions. But terms used in statutes cannot be defined in a vacuum, divorced from then-relevant statutory context.
{¶ 30} R.C. 2901.03(A) abrogated all common-law offenses and established that only statutorily defined conduct may be found to be criminal in Ohio. R.C. 2901.03(A) provides, “No conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code.” The majority’s definition does not take into account that the General Assembly has expressed its intent as to what constitutes a crime under Ohio law. Rather than defining the adverb “criminally” to correspond with the General Assembly’s definition of “criminal offense,” the majority unnecessarily expands the definition of “criminally” to include violations of any law.[2]
{¶ 31} R.C. 2923.24(C) provides further support for the conclusion that the General Assembly intended “criminally” to be defined in accordance with R.C. 2901.03. R.C. 2923.24(C) provides, “Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.” (Emphasis added.)
{¶ 32} For the purposes of the Revised Code, R.C. 2901.02 classifies offenses into categories and limits the category of “felony” to the following: (1) aggravated murder and murder as defined in the Revised Code, (2) any offense specifically classified as a felony in the Revised Code, and (3) any offense in the Revised *383 Code not specifically classified as a felony if imprisonment for more than one year may be imposed as a penalty. R.C. 2901.02(C), (D), and (E). R.C. 2923.24(C) clearly frames the offense of possessing criminal tools in the context of criminal offenses as classified in the Revised Code.
{¶ 33} Indeed, if R.C. 2923.24(A) is read so broadly as to include the violation of any law, as held by the majority, application of R.C. 2923.24(C) produces strange results. R.C. 2923.24(C) and the definition of “felony” in R.C. 2901.02 mandate that only those criminal-tools convictions that are based upon the intent to use tools in the commission of a felony defined in the Revised Code may be classified as a felony of the fifth degree. All other criminal-tools offenses, presumably including those based upon the intent to use a criminal tool to violate the laws of any other jurisdiction, must then be classified as a misdemeanor of the first degree. If the General Assembly had intended for a criminal-tools charge to be based on the intent to violate the criminal laws of any jurisdiction, as the majority holds, why would the offense be treated differently based solely upon whether the underlying offense is an Ohio offense or an offense under the law of some other jurisdiction?
{¶ 34} Finally, general rules of statutory construction of criminal statutes weigh in favor of a narrower definition of “criminally.” R.C. 2901.04(A) requires that sections of the Revised Code that define offenses be construed strictly against the state and liberally in favor of the accused. In light of the other statutory provisions that support a definition of the term “criminally” as the commission of a criminal offense defined in the Revised Code, application of R.C. 2901.04(A) requires that this court adopt the narrower definition of “criminally” propounded by the trial court and the court of appeals. State v. Chappell, 8th Dist. No. 93298, 2010-Ohio-2465, 2010 WL 2201783.
{¶ 35} The majority’s reliance upon R.C. 2901.04(D) to justify its disregard for R.C. 2901.04(A) and its conclusion that a violation of any law may support a conviction of possessing criminal tools is unavailing. The majority is correct that R.C. 2901.04(D) sets forth an exception to the directive contained in R.C. 2901.04(A). But that exception is irrelevant to the issues before the court in this case. The plain language of R.C. 2901.04(D) demonstrates that the exception applies only when a provision of the Revised Code refers specifically to “a section, or to a division of a section, of the Revised Code” that defines or specifies a criminal offense. (Emphasis added.) R.C. 2923.24 contains no specific reference to a section or division of a section of the Revised Code, and R.C. 2901.04(D) cannot be used in this case to negate the requirement that the definitions of criminal offenses be construed strictly against the state and liberally in favor of the accused.
*384 {¶ 36} The majority’s convoluted interpretation of R.C. 2901.04(D) also disregards the plain language of R.C. 2901.03(A). Despite the fact that R.C. 2901.03(A) unambiguously provides that “[n]o conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code,” the majority attempts to use R.C. 2901.04(D) to expand the definition of a crime to include violations of existing or former laws of this state, other states, the United States, and municipalities. Such an interpretation renders the actual language of R.C. 2901.03(A) meaningless and thwarts the clearly expressed intent of the General Assembly.
{¶ 37} Perhaps more troubling than the majority’s disregard for the plain language of the relevant statutory provisions is the majority’s encroachment on the jurisdiction of the federal courts. It is undisputed that Ohio courts lack jurisdiction over federal criminal prosecutions and the enforcement of federal criminal laws. Yet the majority’s holding poises Ohio courts to encroach upon the federal arena in cases involving Ohio defendants charged with possessing criminal tools.
{¶ 38} The facts of the case before us present just one example of how a state court prosecution for possessing criminal tools based upon an intended violation of federal law may include improper forays into issues of federal law. In order to prove that Chappell committed the offense of possessing criminal tools, the state must prove that his purpose in using the tools at issue was to violate federal copyright law. In few cases will the state be presented with a neat confession from such a defendant that it was his purpose to violate federal copyright law or that it was his purpose to violate Section 506, Title 17, U.S.Code. Instead, the state will be presented with direct or circumstantial evidence that a defendant, for example, intended to copy and sell a DVD or other copyrighted work, as in this case. It will then fall to the state to demonstrate to the trier of fact that those specific actions of the defendant constitute a crime under Section 506, Title 17, U.S.Code. In doing so, the state will be put in the position of presenting a federal criminal case to a state jury or judge, and when a jury is involved, the state court will be instructing the jury on federal criminal law, all in the pursuit of trying an Ohio defendant for an Ohio offense. In resolving inevitable disputes regarding whether the underlying actions of the defendant constitute a federal crime, state courts will be called upon to interpret and apply federal criminal law.
{¶ 39} This court and other Ohio courts have no authority or expertise in federal criminal law. Therefore, this court ought to avoid an interpretation of R.C. 2923.24 that entangles Ohio courts in matters intended for federal courts, particularly when the statutory language can clearly be interpreted to avoid such a result.
*385 William D. Mason, Cuyahoga County Prosecuting Attorney, and Thorin Freeman, Assistant Prosecuting Attorney, for appellant.
Joseph T. McGinness, for appellee.
Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, and Emily S. Schlesinger, Deputy Solicitor, urging reversal for amicus curiae, Ohio Attorney General.
{¶ 40} Based upon the language of R.C. 2901.03(A), 2923.24(C), and 2901.02, I cannot conclude that the General Assembly intended the term “criminally” to be afforded the expansive dictionary definition adopted by the majority. “Criminally” must be defined in conjunction with other provisions of the Revised Code and limited strictly to conduct that constitutes a criminal offense against the state as defined in the Revised Code. Any other definition leads to absurd results that improperly expand the jurisdiction of Ohio’s courts. Accordingly, I dissent.
Pfeifer, J., concurs in the foregoing opinion.

. Although the majority contends that its analysis addresses only the issue whether a criminal-tools charge can arise from an intended violation of federal law, nothing in its analysis supports such a limitation. See majority opinion at ¶ 1, fn. 1. In fact, the majority holds, “[T]he statutory language [of R.C. 2923.24(A)] is susceptible of only one interpretation: the ordinary meaning of ‘criminally’ is not limited to violations of Ohio law and plainly encompasses violation of any law, including offenses defined under Ohio law and federal law.” (Emphasis sic.) Majority opinion at ¶ 18. Therefore, the majority’s analysis and definition of “criminally” are so broad as to include intended violations of municipal ordinances, the laws of other states, and the laws of foreign jurisdictions.